IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Jimmy L. Houston, | Case No. 3:18 CV 305 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Gary C. Mohr, et al., | |
| Defendants. | |

## INTRODUCTION

In an earlier Memorandum Opinion and Order (Doc. 46), this Court dismissed Counts Three through Nine of the Complaint (Doc. 1) and dismissed half of the original sixteen Defendants. The Order stated that the other two Counts and eight Defendants would remain in the case "pending this Court's review of Houston's medical records" (Doc. 46 at 8). The purpose of this review was "to identify which individual medical providers were responsible for the allegedly deficient care" (*id.* at 4). With this review completed, this Court now treats the remainder of the pending Motions to Dismiss (Docs. 21, 44) as a motion for summary judgment and asks whether summary judgment is appropriate as to the remaining Counts and Defendants.

## BACKGROUND

Plaintiff *pro se* Jimmy Houston, a prisoner at Toledo Correctional Institution (TCI), filed this lawsuit under 42 U.S.C. § 1983 against numerous employees of the Ohio Department of Rehabilitation and Corrections (ODRC) alleging a variety of constitutional claims. A general factual background of the allegations can be found in the earlier Order (*id.* at 2).

The earlier Order dismissed all Counts except for Counts One and Two, which are both Eighth Amendment claims alleging deficient medical treatment. Count One alleges that "Defendant's [sic] refusal to determine the source of [Houston's] abdominal/rectal pain and provide treatment" amounts to deliberate indifference to Houston's serious medical needs (Doc. 1 at 11). Count Two alleges that Defendants' third attempt at a colonoscopy, which resulted in lacerations to Houston's colon and stomach, amounted to deliberate indifference (*id.* at 12).

The earlier Order said that Houston could proceed on Counts One and Two only if he could identify those medical providers who were responsible for the allegedly deficient treatment from the remaining eight Defendants (Doc. 46 at 4–5). The remaining eight defendants are Dr. Robert Hammond, Chief of the ODRC Bureau of Medical Services; Hannah Kroggel and Anitra Barker, health care administrators at TCI; Dr. Kathleen Meehan-de la Cruz and Dr. Susan Moore, medical doctors at TCI; Sherry Cochran and Ms. Mantufel [sic] (first name unknown), nurses at TCI; and Dr. James Kline, medical doctor at Trumbull Correctional Institution.

This Court has reviewed Houston's medical records, which the Ohio Attorney General's Office (AGO) provided on a CD (Bates numbers AGO 000001–000771). These records span from January 2016 through February 2018 and consist of over 700 pages (*id.*). This Court has also reviewed summaries of these medical records (Docs. 48–49). Houston has had the opportunity to review his medical records at TCI. This Court held Record Phone Conferences on October 30, 2018, and November 14, 2018, to hear argument on what connection -- if any -- these records show between the remaining Defendants and the alleged inadequate medical care.

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact," such that the moving party "is entitled to judgment as a matter of law." Federal Civil Rule 56(a).

2

When evaluating a motion for summary judgment, this Court must view the facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This Court does not weigh the evidence or determine the truth of any matter in dispute; rather, it evaluates only whether the record contains sufficient evidence from which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49 (1986).

## DISCUSSION

Houston brings his Eighth Amendment claims under 42 U.S.C. § 1983. A successful Section 1983 claim requires evidence of "(1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006). To sustain a Section 1983 claim against a particular defendant, a plaintiff must show evidence of the defendant's personal involvement in the allegedly unconstitutional conduct. *Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").

Failure to provide a prisoner with adequate medical treatment is a violation of the Eighth Amendment's prohibition against cruel and unusual punishment only when it results from "deliberate indifference" to the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To survive summary judgment, Houston must show (1) his medical condition posed a "substantial risk of serious harm," and (2) prison officials acted with deliberate indifference to that risk. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The first prong is not at issue -- Defendants concede that Houston's abdominal pain combined with his reliance on a colostomy bag constitute a sufficiently serious medical need. The focus then is on the second prong.

To establish the second prong of deliberate indifference, Houston must show that a Defendant (1) subjectively knew of a risk to Houston's health, (2) drew the inference that a substantial risk of harm existed, and (3) consciously disregarded that risk. *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010). A deliberate indifference claim requires more than allegations of medical malpractice or negligent diagnosis and treatment. *Jennings v. Al-Dabagh*, 97 F. App'x 548, 549–50 (6th Cir. 2004). Rather, it requires evidence of "an unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105–06. When "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Similarly, evidence of "[a]n accident," even one that "may [have] produce[d] added anguish," cannot sustain a deliberate indifference claim. *Estelle*, 429 U.S. at 105.

Before this Court can treat the remainder of the pending Motions to Dismiss as one for summary judgment, Federal Civil Rule 56(c) "mandates that the party opposing summary judgment be afforded notice and a reasonable opportunity to respond to all issues to be considered by the court." *Routman v. Automatic Data Processing, Inc.*, 873 F.2d 970, 971 (6th Cir. 1989). This Court's earlier Order and record phone conferences satisfy this notice requirement.

This Court reviewed Houston's medical records to evaluate whether there is sufficient evidence for a reasonable jury to find for Houston on his Eighth Amendment claims against the remaining Defendants. There is not.

First, Defendants Hammond, Barker, and Kline do not appear anywhere in the medical records. The Complaint contains no details explaining any connection between these individuals and Houston's medical problems, and his medical records do not fill that gap. As there is no indication

4

these Defendants were personally involved in making medical decisions for Houston, the allegations against them must fail. *See Heyerman*, 680 F.3d at 647.

To the extent the Complaint attempts to hold Hammond or other Defendants vicariously liable for negligent supervision, such allegations, too, must fail. "Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[A] failure of a supervisory official to supervise, control, or train the offending individual officers is not actionable absent a showing that the official either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson County*, 668 F.2d 869, 873 (6th Cir. 1982). At a minimum, a plaintiff must show the official "implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* Neither the Complaint nor the medical records make any such showing here.

Although Defendants Kroggel, Meehan-de la Cruz, Moore, Cochran, and Mantufel do appear in some of the medical records, they do not reflect deliberate indifference. The records show evidence of medical professionals dealing with a difficult medical situation, but they do not lend any support to the bare allegations of Counts One and Two.

In Count Two, Houston alleges that the third attempt at a colonoscopy, which resulted in lacerations to Houston's colon and stomach, amounted to deliberate indifference (Doc. 1 at 12). This colonoscopy took place in January 2017, and the records show he had to remain in the hospital for several weeks afterwards due to complications from the procedure. But the records also show that the colonoscopy occurred at the Ohio State University (OSU) Medical Center, not at TCI, and none of the remaining Defendants were involved in the procedure (*see* Doc. 49 at 13, 15; AGO 000288–000289, 000291–000294). At best, the records show Defendants were involved in the decision to

5

send Houston to the OSU Medical Center for the procedure, quite the opposite of deliberate indifference. Neither the Complaint nor the medical records connect Defendants to the allegations in Count Two.

In Count One, Houston alleges Defendants, without naming any particular ones, "refus[ed] to determine the source of [his] abdominal/rectal pain and provide treatment" (Doc. 1 at 11). The medical records show no connection between any of the remaining Defendants and this allegation. And, where Defendants do appear in the medical records, the records show Defendants administered diagnostic testing and pain management to try to identify the source of and treat Houston's pain. After Houston reported abdominal pain in December 2016, Defendants conducted x-rays (Doc. 49 at 7; AGO 000135), then transferred him from TCI to a local hospital for emergency care (Doc. 49 at 8; AGO 000361–000363). At the hospital, Houston was treated by several medical professionals who are not named Defendants in this lawsuit. Those medical professionals performed further diagnostic procedures, uncovering the presence of a kidney stone (Doc. 49 at 8; AGO 000310–000312). The records show that Houston had kidney-stone-related pain in late 2016 and early 2017, and Defendants and other medical professionals tried several methods, including a ureteral stent, to treat that pain (*see, e.g.*, Doc. 49 at 11; AGO 000306–000309).

In the weeks following the January 2017 colonoscopy at the OSU Medical Center, Houston complained of further abdominal pain. He spent two of those weeks recovering at the OSU Medical Center, where none of the Defendants worked or were involved in his treatment. As for the doctors at that hospital, they offered to perform further surgery to remove painful abscesses in Houston's colon, "but [Houston] refused any abdominal surgery until he was released from prison" (Doc. 49 at 15; AGO 000291).

Two weeks after the January colonoscopy, Houston was transferred to ODRC's Franklin Medical Center, where he remained for another several weeks (*see, e.g.*, Doc. 49 at 16, 36; AGO 000747, 000481). Again, none of the Defendants were directly involved in his care or treatment during this time. The medical professionals who did treat him did not ignore his reports of abdominal pain. Although they could not make some diagnostic tests, such as further endoscopic procedures, because of scar tissue obstructing Houston's colon (*see, e.g.*, Doc. 49 at 37; AGO 000167), they conducted CT scans of his abdomen (Doc. 49 at 27; AGO 000617), provided him with pain medication (*see, e.g.*, Doc. 49 at 26; AGO 000627–000628), and made recommendations for surgery (Doc. 49 at 37; AGO 000167). Houston, again, declined surgery (*id.*).

The next involvement of any Defendant is in March 2017, when Houston was transferred back to TCI (Doc. 49 at 40; AGO 000446–000448). After that point, the only Defendants who appear in the records are Meehan-de la Cruz, Cochran, and Mantufel. The records show Defendants treated Houston for further kidney stone issues (Doc. 49 at 41; AGO 000443–000445), administered pain medication for colorectal pain (Doc. 49 at 42; AGO 000426), and monitored Houston for colorectal cancer (Doc. 49 at 42; AGO 000422–000425). Further, Defendant Meehan-de la Cruz identified the source of colorectal pain as an abnormal organ connection resulting from the abscesses in his colon (*id.*) -- abscesses that doctors had earlier recommended surgically removing, but Houston declined.

Although the medical records show Houston has struggled through some difficult medical problems, they do not suggest any of the medical professionals who treated him engaged in "an unnecessary and wanton infliction of pain" or were deliberately indifferent to his medical issues. *Estelle*, 429 U.S. at 105–06. Without any connection between Defendants and the alleged Eighth Amendment violations, no genuine issue of material fact exists, and no "fair-minded jury could return a verdict for" Houston on his claims. *Anderson*, 477 U.S. at 252.

7

**CONCLUSION**

With review of Houston's medical records completed and treating the remainder of the pending Motions to Dismiss (Docs. 21, 44) as a motion for summary judgment, this Court grants summary judgment on the remaining Counts and dismisses the remaining Defendants.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

November 26, 2018